# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 15-485V
(Not to be Published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| ROSA ALLICOCK, *on behalf of her minor child*, M.A., <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Filed: May 26, 2016 <br><br> Petitioner's Motion for Attorney's Fees and Costs; Reasonable bBasis; Statute of Limitations; Developmental Regression; Autism Spectrum Disorder; Significant Aggravation |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Andrew D. Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioner.

*Traci R. Patton*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING ATTORNEY'S FEES[1]

On May 12, 2015, Rosa Allicock filed a petition seeking compensation on behalf of her minor child, M.A., under the National Vaccine Injury Compensation Program (the "Vaccine Program"),[2] alleging that vaccinations that M.A. received on May 14, 2012, and July 17, 2012,

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged and confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act.

respectively, significantly aggravated his global developmental delays. By October of that same year, however, Petitioner had determined that she could not succeed on her claim, and I granted her request to dismiss the petition by decision dated November 23, 2015 (ECF No. 19).

Ms. Allicock has now requested an award of attorney's fees and costs in the combined amount of $19,881.35. App. for Attorney's Fees & Costs, dated Mar. 15, 2016 (ECF No. 24) ("Fees App."). Respondent opposes the request, arguing that the claim lacks reasonable basis. For the reasons stated below, I grant in part Petitioner's request, awarding her $20,411.28 in fees and costs.

**Procedural History and Fees Request**

As noted above, the case was filed in May 2015. Pet. at 1. The petition expressly stated that M.A. had shown signs of developmental problems after certain childhood vaccinations received at the end of December 2011, but alleged that those problems worsened after the May 2012 vaccinations. *Id*. at 19. Petitioner also maintained that later that same year, some of M.A.'s treaters diagnosed him as having experienced an encephalopathy some time after the May and July 2012 vaccinations. Consistent with these factual allegations, Petitioner specifically claimed that M.A.'s developmental problems had been significantly aggravated by the May and July 2012 vaccinations. *Id.* at 27.

The history of counsel's representation of Ms. Allicock bears on the present fees request. Four months prior to the petition's filing, Andrew D. Downing, Esq., and other attorneys and paralegals at the law firm of Van Cott & Talamante, PLLC were contacted by Ms. Allicock, and immediately began to work on the case. *See generally* Billing Records, attached as Ex. A to Fee App. (ECF No. 24-1). Thereafter, between January 2015 and the date of the petition's filing in May, Mr. Downing billed 7.5 hours to the matter, once medical records were obtained in February 2015. Ex. A at 1-2. Justin Redman, an associate working at Mr. Downing's firm, billed 11.8 hours to the matter in the same timeframe (Ex. A at 4-6), while two paralegals – Bob Cain and Danielle Avery – collectively performed 17.5 hours of work. *Id.* at 7-10 and 11-15. Of particular interest, given the present motion, are entries in the time records referencing discussions in April 2015 between Mr. Downing and Ms. Allicock regarding "statute of limitations" concerns and her allegations that M.A.'s condition worsened after the May 2012 vaccinations. *Id.* at 2.

After the case's initiation, Petitioner filed a large set of medical records relevant to her claim (Notice, dated May 21, 2015 (ECF No. 5)), and then a second set in June, followed by a statement of completion. *See* June 23, 2015 Statement of Completion (ECF No. 9). I then set October 6, 2015, as the deadline for the Rule 4(c) Report, and Respondent complied with my order. *See* Rule 4(c) Report, dated Oct. 6, 2015 (ECF No. 15).

In her Rule 4(c) Report, Respondent questioned whether Ms. Allicock could establish significant aggravation of M.A.'s condition, observing that his developmental delay diagnosis was "well established" prior to the May 2012 vaccinations. ECF No. 15 at 12. She also noted that the record did not otherwise offer support (such as a treater's opinion) for the allegation that M.A.'s condition had worsened as a result of vaccines he received (although she acknowledged that Petitioner had at least alleged hearing this from one treater, Dr. Anna Floet). *Id.* at 13; *see also* Statement of Rosa Allicock, dated May 5, 2015, attached as Ex. 1 to Pet. (ECF No. 1-1). Because of the lack of record support, in a footnote Respondent raised the possibility that the claim lacked a reasonable basis, but she did not elaborate on the point. *Id.* at 12 n.5.

After review of the Rule 4(c) Report, I scheduled a status conference with the parties for October 16, 2015. At that time, I stated my initial view that the case's reasonable basis seemed in doubt, echoing Respondent's factual points. *See* Scheduling Order, dated October 19, 2015 (ECF No. 16). Petitioner's counsel signaled his awareness of the case's weaknesses and asked for an opportunity to consult with Ms. Allicock about possible next steps.

Not long after, on November 18, 2015, Petitioner filed an unopposed motion requesting a decision dismissing the case. ECF No. 18. In it, Petitioner stated that "[a]lthough [she] feels very strongly about what she witnessed with M.A., an investigation of the facts and science supporting the case as medical records have been receive has demonstrated to Petitioner that she will likely be unable to prove that she is entitled to compensation in the Vaccine Program." *Id.* at 1. She also referenced the fact that the purportedly slow delivery of documents relevant to her claim had, coupled with a looming limitations period for filing the case, forced her to act despite concerns about the claim's strength. *Id.* Based on my own examination of the record, I concluded that there was insufficient evidence that M.A. suffered a "Table Injury." Nor had she offered a medical expert's opinion or any other persuasive evidence indicating that the alleged injury that M.A. experienced could have been caused or significantly aggravated by the vaccinations that he received on May 14, 2012, and July 17, 2012. I therefore granted the motion and dismissed the case by decision dated November 23, 2015. *See* ECF No. 23.

Ms. Allicock filed the present fees petition in March of this year. *See generally* Fees App. In it, she requests an award of $18,141.50 in fees reflecting the work performed on the case by Mr. Downing (24.9 hours at $350 per hour), plus two associates (Mr. Redman (15.8 hours) and Courtney Van Cott (18.9)), both billing at the rate of $195 per hour. Exs. A-C, F, and G to Fees App. She also asks that two paralegals (Mr. Cain and Ms. Avery) be reimbursed at the rate of $100 per hour for a combined total of 26.6 hours of work. *Id.* at Exs. H-I. Finally, she requests reimbursement of $1,739.85 in other costs, which include copying, filing costs, and medical records charges, among other things. Ex. A to Fees App. at 18-20.

3

Respondent opposed the fees application on March 30, 2016. ECF No. 25 ("Opp."). She vigorously contested whether the action possessed reasonable basis at the time of its filing, noting that M.A.'s developmental problems were well-documented in the medical records as having begun before May 2012. Opp. at 10, 17. Otherwise, there was no evidence in the medical record of a post-May 2012 vaccine worsening beyond the claims of the Petitioner herself. *Id.* at 17. Respondent noted that, as reflected by the billing records, Petitioner's counsel had several months from the date the case would be time-barred to complete review of medical records, and thus the pressure of the looming claim cut-off date was not overwhelming. *Id.* at 18. While Respondent acknowledged that certain records were in fact not in Petitioner's possession, she and her counsel had enough to be plainly on notice of the problems with the claim. Respondent's argument also distinguished the reasonability of filing the case to preserve the statute of limitations from the evidence establishing the claim's reasonable basis. *Id.* at 19.

Petitioner replied in support of her fees application on April 8, 2016 (ECF No. 26) ("Reply"). She stressed the importance of considering the pending statute of limitations herein when evaluating her claim's reasonable basis, and that Program decisions more often than not were lenient in evaluating reasonable basis for cases that needed to be filed shortly before a looming cut-off date. Reply at 2-4. Although she noted that "counsel had four months to conduct a pre-filing inquiry," she nevertheless argued that she did not have sufficient medical records as of the date of filing to fully evaluate the claim's substance (and in particular, whether M.A. had experienced worsening of his developmental problems after May 2012). *Id.* at 3. She otherwise distinguished cases cited by Respondent as factually inapposite. *Id.* at 5. The matter is now ripe for resolution.[3]

## ANALYSIS

I.  **Legal Standards for Recovery of Fees in Unsuccessful Cases**

Vaccine Program petitioners who receive compensation for their injuries are by statute entitled to an award of "reasonable" attorney's fees and costs. Section 15(e)(1). It is for the special master to evaluate and decide whether the fees sought are in fact reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters may, in the exercise of their discretion, reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*,

---

[3] After filing the reply, Petitioner filed a "supplement" to her original application. *See* Supplement, dated April 12, 2016 (ECF No. 27). The Supplement requests an additional $3,741 in attorney's fees (3 hours of Mr. Downing's time plus 13.8 hours of Ms. Van Cott's time) incurred in preparing the fees request and Reply in March and April of this year, plus $407.08 in additional costs (the largest component of which is a Westlaw research charge). *See* Ex. K to Supplement. Respondent did not file anything in reaction or opposition. As set forth below, I apply the same reasoning about reasonable basis discussed with respect to Petitioner's primary fees request to these additional sums requested.

27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

Even unsuccessful petitioners, however, may be awarded reasonable fees and costs if, in the special master's exercise of discretion, such an award is appropriate (and, as in the case of successful claims, if the requested fees and costs are "reasonable"). The primary factors to be considered under such circumstances are whether (a) the petition was brought in good faith; and (b) there was a reasonable basis for the claim for which the petition was brought. Section 15(e)(1); *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012).

Determining whether a petition was filed in good faith is a subjective inquiry, and can be established as long as the petitioner demonstrates an honest belief that she has suffered a compensable vaccine injury. *See Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993); *see also Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (petitioner is entitled to presumption of good faith).[4] This element is therefore the more easily established of the two. *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *7 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("[d]ue to its subjective nature, the standard for good faith is very low"). Respondent has not questioned Petitioner's good faith in filing the case, and I do not find any grounds in the record to conclude the case was not so filed.

## II.    Reasonable Basis

Determining a claim's reasonable basis involves application of objective criteria. *See McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303-04 (2011) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375 (Fed. Cir. 1994)) ("[t]he petitioner must affirmatively establish a reasonable basis to recover attorneys' fees and costs.")). An assessment of reasonable basis "look[s] not at the likelihood of success but more to the feasibility of the claim." *Di Roma*, 1993 WL 496981, at *1.

There is no explicit instruction from the Federal Circuit setting the precise evidentiary burden imposed on a petitioner attempting to establish reasonable basis. As stated in *Chuisano v. Sec'y of Health & Human Servs.*, No. 7-452V, 2013 WL 6234660, at *12 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), *mot. for review den'd*, 116 Fed. Cl. 276 (2014), "[r]easonable basis is a standard that petitioners meet by submitting evidence." This is simply an alternative way to characterize the overarching fact that an unsuccessful petitioner has a burden of proof to satisfy before a fee award

---

[4] Decisions of special masters and judges of the Court of Federal Claims constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). By contrast, Federal Circuit decisions are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. App'x 712 (Fed. Cir. 2004).

<mark>is appropriately granted. *McKellar*, 101 Fed. Cl. at 304. That burden can be carried only by submission of probative, persuasive evidence – and the evidence a petitioner possesses regarding her claim bears on the substantive basis for the claim. But the analysis should ultimately be based on the "totality of the circumstances," taking into account all facts relevant to a given case, in addition to the evidence actually supporting the claim itself. *Chuisano*, 116 Fed. Cl. at 286, (citing *McKellar*, 101 Fed. Cl. at 303).</mark>

As to the kinds of proof that might be employed in meeting this burden, other special masters have looked to whether a claim has support in the contemporaneous medical records, or in a medical opinion, or if the petitioner can demonstrate at least that "fundamental inquiries" were made in an effort to identify evidentiary support for the claim. *Melbourne v. Sec'y of Health & Human Servs.*, No. 99-694V, 2007 WL 2020084, at *6 (Fed. Cl. Spec. Mstr. June 25, 2007) (petitioner cannot obtain fee award once reasonable basis ceases to exist, based upon counsel's awareness that the medical record or expert opinion fails to support the claim); *Di Roma*, 1993 WL 496981, at *2.

The scope and sufficiency of an attorney's investigation into the basis for a petitioner's claim is highly relevant to determining if reasonable basis existed for filing the petition. This flows naturally from the fact that the Act expressly requires petitioners to include an affidavit and additional documentation with their initial filing. (Section 300aa-11(c)(1)(A) (Vaccine Act requires that a petition shall contain "an affidavit, and supporting documentation, demonstrating that the person who . . . died received a vaccine set forth in the Vaccine Injury Table"). Basic inquiries by counsel are therefore required prior to the filing of a petition under the Act. *See Di Roma*, 1993 WL 496981, at *2 (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258-59 (1991)). Attorneys practicing in the Program are expected to conduct a reasonable pre-filing investigation—including at a minimum an evaluation of the factual basis for the claim. *See Turner v. Sec'y of Health & Human Servs.*, No. 99–544V, 2007 WL 4410030, at *7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). In determining the adequacy of the prefiling inquiry, special masters have considered the circumstances under which the petition was filed, including whether petitioner filed with the assistance of counsel, and if so, how much time before the filing deadline petitioner provided counsel for pre-filing investigation. *Id*. at *6.

Although in the history of the Program special masters have tended to be "quite generous in finding a reasonable basis for petitioners" in granting fee awards in unsuccessful cases, that generosity wanes where it is evident that counsel failed to investigate sufficiently the facts underlying the claim. *Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *3 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citation omitted); *see also Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993) (affirming denial of attorney's fees where contemporaneous records provided no basis for alleged injury), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995); *Di Roma*, 1993 WL 496981, at *3 (denying attorney's fees and costs where "[m]inimal

<mark>6</mark>

research and good sense should have indicated that th[e] case had no basis under the law").

The fact that a case must be filed quickly, to avoid being time-barred by the Act's three-year limitations period, is highly relevant to the reasonable basis analysis. As Petitioner alleges, special masters have been lenient in finding reasonable basis if time constraints require prompt action to avoid the cut-off date for bringing a claim. *See, e.g.*, *McNett v. Sec'y of Health & Human Servs.*, No. 99-684V, 2011 WL 760314, at *7 (Fed. Cl. Spec. Mstr. Feb. 4, 2011) (citing *Hearell v. Sec'y of Health & Human Servs.*, No. 94–1420V, 1993 WL 129645, at *1 (Fed. Cl. Spec. Mstr. Apr. 6, 1993) ("Because of the time constraints, it was reasonable for the petitioner to file an incomplete petition in this case")); *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) (stating that "a filing on the eve of the running of the statute of limitations may be supported by less information than would be expected if counsel had more time to conduct a prefiling investigation of the factual underpinnings and the medical basis for a vaccine claim").

Based on my review of the case record coupled with the history of counsel's representation of Petitioner as set forth in the billing records, I conclude that this matter had barely enough reasonable basis to be viable – up to the time when Ms. Allicock determined, six months after filing, that she could not proceed further. The Petition reflects Ms. Allicock's awareness that M.A.'s developmental problems preceded the May 2012 vaccinations, and also plainly asserts a cause of action for significant aggravation. It is thus evident that, from the initiation of the case, Petitioner understood the contours of her claim – contrary to Respondent's assertions that such facts undercut the claim's ultimate factual strength. Petitioner also acted based on post-vaccination diagnoses that M.A. had experienced an encephalopathy – and although such assertions may have lacked strong support in the actual medical record, they were at least reflected in a medical opinion (based on Petitioner's recollection). *See, e.g.*, Pet.r's Ex. 12 at 45. Accordingly, she had some grounds for proceeding, even if many of the records already in her possession highlighted weaknesses in the case.

It is true that counsel had control of the matter for four months prior to its May 2012 filing. I would generally deem this sufficient time for investigating a claim's viability. However, under the circumstances there was enough time pressure on Petitioner to justify her acting despite some hints of bigger problems with the claim. Furthermore, the lack of compelling evidence of the alleged aggravation itself was not necessarily fatal to the claim when filed. In keeping with the fact that Program claimants can prove entitlement with a wide variety of evidence, Petitioners can establish the onset of symptoms based upon their own corroborated allegations, even where contemporaneous medical records do not support the allegation. *Vallenzuela v. Sec'y of Health & Human Servs.*, No. 90-1002V, 1991 WL 182241, at *3 (Fed. Cl. Spec. Mstr. Aug. 30, 1991); *see also Eng v. Sec'y of Health & Human Servs.*, No. 90-1754V, 1994 WL 67704, at *3 (Fed. Cl. Spec. Mstr. Feb. 18, 1994) (Section 13(b)(2) "must be construed so as to give effect also to § 13(b)(1)

which directs the special master or court to consider the medical records (reports, diagnosis, conclusions, medical judgment, test reports, etc.), but *does not require the special master or court to be bound by them*") (emphasis added).

Ms. Allicock alleged that she observed a worsening of M.A.'s condition after his May 2012 vaccination, and that a treater had informed her that at some point M.A. experienced an encephalopathy. While such evidence may not have been strong, and may have lacked corroborative proof in the medical record, it was enough to suggest to her counsel that the claim had some basis, and that review of as much of the record as possible was necessary before concluding otherwise. I therefore find that that the case had reasonable basis through the time Petitioner (when confronted by direct challenges to the claim's deficiencies) decided to seek dismissal six months after filing. I also credit counsel's willingness to confront the realities of the case with his client, and to end the matter immediately after learning of Respondent's reaction to the claim, as well as my own. This is not a case where a party continued with a facially-deficient case long after it was self-evident, in the vain hope of turning up something probative.

My ruling herein should not be interpreted to mean that I will always find reasonable basis exists to bring claims alleging that an ASD-like developmental regression was induced by a vaccine. It should now be clear to Program practitioners, based on numerous decisions published in the past two years, that the theory that a child experienced a vaccine-induced encephalopathy resulting in an ASD-like regression rarely succeeds without facially strong evidence.[5] Petitioners, and the counsel representing them, should act with great caution when considering whether to advance such a claim, especially when not supported by corroborative medical record evidence.

**III.   Challenges to the Amounts Requested for Petitioner's Attorneys**

     A.    *Attorney Hourly Rates*

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health and Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2011) (quoting *Blum v. Stenson*, 465

---

[5] An illustrative example of the kind of strong circumstantial proof necessary to succeed on such a theory is *Wright v. Sec'y of Health & Human Servs.*, No. 12-423V, 2015 WL 6665600, at *6 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). In *Wright*, the petitioners met the Table criteria for an "acute encephalopathy" following vaccination by establishing by preponderant evidence that the vaccinated child had experienced a seizure followed by loss of consciousness shortly after receipt of pertussis-containing vaccine; the severe reaction lasted for more than 24 hours, with resulting demonstrable significant changes in behavior. *Wright*, 2015 WL 6665600, at *30-31. But the special master responsible for that decision (former Chief Special Master Vowell) explicitly noted in her decision that petitioners would not have been able to establish entitlement (under the same facts) for a Non-Table claim, because their expert presented a causation opinion that she found "absurd and biologically impossible." *Id.* at *2.

U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id*. at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, DC for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella,* 86 Fed. Cl. at 205-06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.[6]

In this case, Petitioner's counsel asks for an award of fees for Mr. Downing's services at the rate of $350 per hour. In other cases, I have ruled that Mr. Downing, who practices in Arizona, is entitled to the in-forum rate consistent with the ranges determined in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). *See Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *11, n.16 (Fed. Cl. Spec. Mstr. Sept. 30, 2015) (referencing *McCulloch*); *see also Scharfenberger v. Sec'y of Health & Human Servs.*, No. 11-221V, 2015 WL 3526559, at *6 (Fed. Cl. Spec. Mstr. May 15, 2015); *Tieu Binh Le v. Sec'y of Health & Human Servs.,* No. 07-895V, 2014 WL 4177331, at *13 (Fed. Cl. Spec. Mstr. July 31, 2014) (range for "experienced attorneys" is $275 to $413 per hour); *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *12 (Fed. Cl. Spec. Mstr. May 14, 2014) (applying range of $275 to $414 per hour for attorney with ten years of experience). Because Petitioner asks for the same hourly rate I awarded in *Al-Uffi*, and have applied in other cases involving Mr. Downing, and since Respondent does not otherwise object to the rate, I will apply it to the fees request in this case.

Petitioner further requests reimbursement for the work of the two associate attorneys on the case at the same rate for both—$195 per hour. I awarded this rate for Mr. Redman's work in *Al-Uffi*—and there, as here, Respondent raised no objection to it. *Al-Uffi*, 2015 WL 6181669, at

---

[6] In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate is used for the lodestar calculation. *Avera*, 515 F.3d at 1349, (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). Here, however, the parties do not dispute that the forum rate and the rate prevailing among Arizona attorneys (the geographic locale from which Mr. Downing practices) is substantially equivalent, obviating the need for such rate comparison. *See* Opp. at 18.

*3 n.5. What is more, the sum is consistent with the rate ranges established in *McCulloch* for an attorney of his experience (five years total litigation experience, plus two years in the Program). *McCulloch*, 2015 WL 5634323, at *20-21 (reviewing proper rates for comparable in-forum attorneys). It is also a reasonable rate for Ms. Van Cott, although she has slightly less overall experience. I therefore apply it herein to both attorneys.

        B.      *Hours Expended by Petitioner's Attorneys*

Determining a reasonable sum for a fees award in Vaccine Program cases involves more than the mere performance of a mathematical calculation once an appropriate hourly rate is established. I must also determine if the fee applicant has established the reasonableness of the work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.").[7] The special master is not obligated to evaluate an attorney's billing records on a line-by-line basis in deciding a fee petition. *Saxton*, 3 F.3d at 1521-22 (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen*, 102 Fed. Cl. 719 at 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight per cent of the numbers of hours for which compensation was sought). At bottom, as the Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Respondent offers a broad-brush objection to the reasonableness of time expended on this matter. Opp. at 20-21. For the most part, her arguments about reasonable basis illuminate the failure of counsel to determine sooner that the case lacked merit. But, as noted above, it is within my discretion to determine whether the time devoted to the matter was reasonable regardless of Respondent's objections, and even where Respondent has not specified objectionable components of a fees request, such as a category of work deemed inefficient or unnecessary. *Sabella*, 86 Fed. Cl. 201, 208–09.

Even though I find that sufficient reasonable basis for Ms. Allicock's claim existed until Petitioner's decision to seek its dismissal, it is not my conclusion that all of the time devoted to the case was reasonably spent. I am particularly troubled by the fact that counsel and his legal assistants devoted nearly 40 hours to the case in the four months before it was filed. This was ample investigatory time to devote to such a borderline-reasonable case, and to discover that its

---

[7] Although *Mares* did not interpret the Vaccine Act's fees provisions, fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

weaknesses outweighed its strengths. This did not occur.

I also find objectionable (consistent with Respondent's position) the amount of time devoted to preparing the fees application – nearly one-half of the hours billed to the whole matter. Mr. Downing billed more than 12 hours to the task (approximately $4,200) while his associate, Ms. Van Cott, billed over 15 hours (an additional nearly $2,000). That is particularly unacceptable in a case in which reasonable basis objections have as much heft as they do here. In addition, Mr. Downing should be aware of the recent decisions, starting with *Al-Uffi*, in which I awarded him the same requested hourly rate, rendering it unnecessary for him to devote so much time to marshaling his arguments (even if Respondent was unwilling compromise on a fees figure).[8]

In light of the above, I hereby reduce the time billed to this matter as follows:

(a) All time billed by all attorneys on the matter between January 2015 and the filing of the case in May 2015 is **reduced by 25 percent**. This reduction addresses counsel's failure to act more expeditiously in analyzing the claim, while also keeping in mind that Petitioner had limited time to act before the limitations period cut-off. Therefore, one-fourth of the period Petitioner's counsel actually had to act should be discounted;

(b) All time billed to the matter from the date of its filing until the motion for a decision dismissing the case was granted in November 2015 is awarded; and

(c) the amount billed thereafter to recover fees in this case is reduced by 30 percent (with the exception of costs incurred in preparation of the reply; such costs are awarded in full, given that Respondent herself prepared a lengthy brief requiring a response).

Based upon the above, I arrive at the following calculations:

(1)  <u>Pre-Filing Fees, reduced by 25%</u>

Mr. Downing (1/5/15—5/11/15): 7.5 hrs. – (.25 x 7.5) = 5.625 hrs. x $350 = $1,968.75

Mr. Redman (1/28/15—5/5/15): 11.8 hrs. – (.25 x 8.85) = 8.85 hrs. x $195 = $1,725.75

---

[8] Indeed, counsel could have brought the issue to my attention before filing a motion, obviating the need not only for briefing but also for the preparation of a decision.

    (2)    <u>Pre-Dismissal Fees, granted in full</u>

           Mr. Downing (5/12/15—11/24/15): 5.2 hrs. x $350 = $1,820

           Mr. Redman (5/19/15—7/6/15): 4 hrs. x $195 = $780

    (3)    <u>Fees Application Fees, reduced by 30%</u>

           Mr. Downing (12/15/15—3/14/16): 12.2 hrs. – (.30 x 12.2) = 8.54 hrs. x $350 = $2,989

           Ms. Van Cott (12/17/15—2/9/16): 18.9 hrs. – (.30 x 18.9) = 13.23 hrs. x $195 = $2,579.85

    (4)    <u>Fees Reply Fees, granted in full</u>

           Mr. Downing (4/4/16—4/8/16): 3 hrs. x $350 = $1,050

           Ms. Van Cott (3/15/16—4/7/16): 13.80 hrs. x $195 = $2,691

**IV.**    **Costs**

There are two categories of costs requested herein: paralegal costs and litigation-related costs. As to the former, Petitioner requests reimbursement for the services of two paralegals at a rate of $100 per hour. This rate is consistent with my prior awards to Mr. Downing's firm. *Al-Uffi*, 2015 WL 6181669, at *3, 14 n.20. Respondent makes no objection to the proposed paralegal rates either. I will therefore award the requested paralegal rates herein.

With respect to paralegal time, Respondent offers no specific objections to the reasonableness of any particular time entries. Although I have reduced the amount of attorney time that I will award in this case, I will not also reduce paralegal time devoted to it. In a case in which reasonable basis is a facial issue, and where (as here) record review assists the resolution of that question, reasonable paralegal time productively aimed at gathering, organizing, and even summarizing medical records is time well spent. And from my review of the billing records, it does not appear to me that paralegal time was wasted in this case; indeed, the sum of Mr. Cain and Ms. Avery's time devoted to the case (approximately 26 hours) is not much more than what Petitioner's lead counsel spent on the matter. I will therefore award requested paralegal costs in their entirety.

I reach the same conclusions with respect to the litigation costs requested herein, which include the expenses of document gathering, photocopying, and online legal research. The total sum requested (approximately $2,100) is reasonable for a case that lasted less than one year. I have identified no particular cost categories that are objectionable, and Respondent has not otherwise objected to any.

## CONCLUSION

Based on all of the above, the following chart sets forth the total calculation of Petitioner's interim fees award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
| --- | --- | --- | --- |
| Mr. Downing's Fees | $9,765.00 | $1,937.25 | $7,827.75 |
| Mr. Redman's Fees | $3,081.00 | $575.25 | $2,505.75 |
| Ms. Van Cott's Fees | $6,376.50 | $1,105.65 | $5,270.85 |
| Paralegal Costs | $2,660.00 | None | $2,660.00 |
| Litigation Costs | $2,146.93 | None | $2,146.93 |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs, awarding **$20,411.28** in fees and costs. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[9]

**IT IS SO ORDERED.**      /s/ Brian H. Corcoran
                                                    Brian H. Corcoran
                                                    Special Master

---

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.